## Colburn *et al.* *versus* Kelly *et al.*

1. In a contract for sale of a wife's land her name preceded her husband, and the contract contained a covenant of warranty: this was notice to the purchaser that it was the wife's land.

2. The contract was signed by the husband and wife, but was not acknowledged: *Held*, that the wife was not bound.

March 11th 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Susquehanna county:* No. 298, to January Term 1869.

This was an action of ejectment brought October 2d 1867, by Thomas Kelly and Susan J., his wife, in her right, against Joseph B. Colburn, for a tract of land in Clifford township, containing 80 acres. Peter Summers was afterwards permitted to become co-defendant.

Joseph B. Slocum was a judgment creditor of Kelly about 1851, and under an execution on his judgment sold a tract of land belonging to Kelly, and containing about 140 acres. There

[Colburn *v.* Kelly.]

was an arrangement that about 100 acres of the land should be for the benefit of Slocum and other creditors of Kelly, and the remainder was to be reconveyed to Kelly.  Peter P. Lee was to take a conveyance of the whole tract and convey Kelly's portion to Susan J. Kelly, his wife.  A conveyance of the land in two tracts was accordingly made by Slocum to Lee about the 1st of December 1854: one tract contained 91 acres and the other 52 acres.  On the 1st of December 1854, Lee conveyed the 52 acre tract to Mrs. Kelly.  Kelly after this went to California, and whilst he was there his wife exchanged this tract for one of about 96 acres, belonging to Morris Gothheimer, and afterwards, on the 1st of July 1859, she bought the 80 acres, the land in controversy, from John B. Lake, by articles of agreement of the same date, in consideration of the conveyance to him of the 96 acres, and the payment of $650, all of which was done by Mrs. Kelly.  On the 11th day of September 1865 an agreement was made "between Susan J. and Thomas Kelly, of Clifford township," &c., of the first part, and Joseph P. Colburn and Floyd Colburn, of the second part, by which the parties of the first part agreed to sell to the parties of the second part the 80 acres, and "make them a good and sufficient warranty deed," for the consideration of $3122, of which $300 were to be paid "down," and the remainder in annual payments of unequal amounts, the last payment to be made in 1875.  There was also a warrant of attorney to confess judgment should any part of the purchase money be unpaid for a year.  The articles were otherwise in the usual form.  The agreement was signed by Thomas Kelly and Susan J. Kelly and the Colburns, but it was not acknowledged by Mrs. Kelly or any of the other parties.

There were on the articles receipts of the 11th and 12th of September 1865 for $300, the amount of the first payment, signed by both Kelly and his wife.  There was evidence that Kelly and his wife had lived on the property since 1859.

Alfred Dart testified: "I was present when the Colburn contract was executed.  It was talked generally in presence of all the parties, Colburn and Thomas Kelly, and Susan, that it was her land that was being sold.  Kelly talked some, and Mrs. Kelly some, and I talked a good deal.  The contract was brought to me and I pronounced it informal for the conveyance of the wife's estate, but they thought it was right, and Kelly intimated that I wanted pay for drawing another contract, and I said no more about it."

The contract was assigned on the 3d of May 1866 to Peter Summers, "for a full and valuable consideration."  There was evidence of declarations of Summers that he had paid all the purchase money to Kelly except $300.  There were a number of bills of exception to evidence in the course of the trial.  The point on

[Colburn *v.* Kelly.]

which the case was decided makes it unnecessary to notice them.

The court (Streeter, P. J.) directed the jury to find for the plaintiffs: and the jury so found. This instruction was assigned for error, on removal of the case to the Supreme Court by the defendants.

*W. J. Turrell* and *W. H. Jessup*, for plaintiffs in error.—Kelly was in possession, claiming to own the land, when Colburn bought, and the wife knew of the purchase and made no claim. He who seeks equity must do equity: 1 Story on Eq., § 59. When one stands by and does not give notice of his title he is estopped: 1 Fonbl. Eq. ch. 3, § 4; Hobbs *v.* Norton, 1 Vern. 136; Hamesden *v.* Cheyney, Id. 150; Arnott *v.* Bigle, 1 Ves. 95; Berrisford *v.* Millward, 2 Atk. 49; Jackson *v.* Cator, 5 Ves. 688; 1 Story Eq., § 385; Pickard *v.* Sears, 6 Adolph. & Ellis 474; Clare *v.* Bedford, 2 Vern. 150; Wright *v.* Arnold, 14 B. Monroe 643; Cord on Married Women, § 246; Davis *v.* Tingle, 8 B. Monroe 543; 1 Story's Eq. 377. The remedy afforded on a void contract is to place the parties in statu quo: Adams' Eq., § 191; Fulton *v.* Moore, 1 Casey 468; Heacock *v.* Fly, 2 Harris 540; Thorndell *v.* Morrison, 1 Casey 326. The payments to Kelly for a void title made the defendants his creditors, and in a contract with them, unless he show clearly that the land had been paid for out of her own estate, it is presumed to be his: Aurand *v.* Schaffer, 7 Wright 363; Gault *v.* Saffin, 8 Id. 307; Baringer *v.* Stiver, 13 Id. 129; Keichline *v.* Keichline, 4 P. F. Smith 76.

*R. B. Little*, for defendants in error, cited Glidden *v.* Strupler, 2 P. F. Smith 200.

The opinion of the court was delivered, May 11th 1869, by

Agnew, J.—Although at first sight complicated, the material facts of this case are simply these: Susan Kelly was the owner of the land in controversy, by a purchase from J. B. Lake, whom she paid for it by the proceeds (which had undergone certain transmutations) of fifty acres of land, conveyed to her by J. B. Slocum. Slocum had purchased Thomas Kelly's title to one hundred and fifty acres of land, at the sheriff's sale, for the benefit of himself and two other creditors of Kelly. Kelly then left for California, and Mrs. Kelly procured a contract from Slocum and others, to let her have all the land of her husband not needed to pay their claims. After Kelly's return, this agreement was carried out by Kelly procuring a purchaser for one hundred acres of the land, at a sum sufficient to pay off the claims of Slocum and his associates. The whole land was conveyed to Peter P. Lee, the purchaser, who reconveyed the fifty acres intended for Mrs. Kelly to her. The contract of J. B. Lake for the eighty acres of land, the subject

[Colburn v. Kelly.]

of this ejectment, was with Mrs. Kelly vesting the only title for it in her, and not her husband. The sale to the defendants below was made in the name of Susan Kelly, as well as of her husband, her name preceding his, and in the bargaining for the land by the defendants (as testified by Mr. Dart, who was present), the title was spoken of as hers; defendants claim under this purchase, which on its face gave notice of a title in Mrs. Kelly, for she is first named, and joined in the covenant for title. The article was not acknowledged, nor is there anything on its face indicating that her name was used to bar a dower estate only. The title when followed up, as has been stated, was vested alone in her. It is clear, therefore, that this is nothing more than the purchase of a wife's land, by an unacknowledged agreement, which does not bind her, and the case falls directly within the principle of Gliddon v. Strupler, 2 P. F. Smith 400, and the cases there referred to.

The judgment is therefore affirmed.